IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAMES W. DATEMA, ) | Case No. 14-60388 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| EMILY KIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 14-6020 |
| ) | |
| ) | |
| JAMES W. DATEMA, ) | |
| ) | |
| Defendant. ) | |

ORDER GRANTING MOTION TO DISMISS

Plaintiff Emily Kim is the beneficiary of a trust. She filed this adversary proceeding seeking a determination that a debt to that trust is nondischargeable under 11 U.S.C. § 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Here, Debtor-Defendant James W. Datema seeks dismissal of that adversary proceeding. For the reasons that follow, the Motion to Dismiss will be granted.

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[1] This statement does not require detailed factual allegations so

---

[1] *Middlebrooks v. Interstate Credit Control, Inc.*, 391 B.R. 434, 436 (D. Minn. 2008).

long as it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[2]  However, a court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted if, after taking all facts alleged in the complaint as true, the complaint fails to state a claim to relief that is plausible on its face.[3]

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[4]

"The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record."[5]

In her First Amended Complaint, Emily Kim asserts that, at a time when she was a minor, her father, Steven Kim, passed away and, as a result, the Emily Kim Revocable Trust (the "Trust") was created for her benefit.  Emily Kim, now over 18 years of age, is the sole beneficiary of the Trust.  Janet Kim, Steven Kim's wife (and, presumably, Emily Kim's mother), was named as the Trustee of the Trust.  Janet Kim subsequently married James Datema, the Debtor herein.  Hereafter, Janet Kim will be referred to as "Janet Datema."

The Debtor was the owner of TimberSource Brokers, LLC.  After Janet Datema married the Debtor, TimberSource and the Debtor received five loans from

---

[2] *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009); *Middlebrooks v. Interstate Credit Control*, 391 B.R. at 436 (the court should dismiss a complaint if, after taking all facts alleged in the complaint as true, those facts fail to raise a right to relief above the speculative level).

[4] *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (citations omitted).

[5] *McAdams v. McCord*, 584 F.3d at 1113.

the Trust's funds. The first loan, to TimberSource, occurred on October 29, 2008 in the amount of $200,000. TimberSource executed a promissory note in connection with this loan,[6] and the Debtor personally guaranteed it. Payment, with interest, was due by December 31, 2009.

On December 1, 2008, TimberSource received a second loan from the Trust, in the amount of $130,000. TimberSource executed a promissory note[7] and the Debtor personally guaranteed repayment, with interest, by December 31, 2009.

On June 12, 2009, TimberSource and the Debtor, apparently as co-obligors, received a loan from the Trust in the amount of $120,000. No note was executed as to this loan, but Emily Kim alleges that it was made upon reliance and with the expectation and understanding between the parties that the Debtor would repay this loan in full.

On January 5, 2010, the Debtor received a loan from the Trust in the amount of $25,000. No note was executed as to this loan, but Emily Kim again alleges that it was made upon reliance and with the expectation and understanding between the parties that the Debtor would repay this loan in full.

Finally, on January 15, 2010, the Debtor received a loan from the Trust in the amount of $4,348.78. Again, no note was executed as to this loan, but Emily Kim alleges it was made upon reliance and with the expectation that the Debtor would repay the loan.

Emily Kim alleges that neither TimberSource nor the Debtor has repaid any of these five loans. Emily Kim alleges that the amount owed, with interest, on all

---

[6] Although the Amended Complaint clearly implies this loan was made from Trust funds, this Promissory Note, which was attached to the Amended Complaint, was made payable to Emily Kim, as opposed to Janet Datema as Trustee of the Trust.

[7] Again, although the Amended Complaint clearly implies that this loan was made from Trust funds, this Promissory Note was made payable to Janet Park Datema, with no reference to her role as Trustee of the Trust.

3

five loans is nearly $1.7 million. The Amended Complaint alleges that a Petition was filed against the Debtor in St. Louis County Circuit Court on January 27, 2014, although the Amended Complaint does not state who – Emily Kim, the Trust, or someone else – brought that lawsuit. In any event, the Debtor filed a Chapter 7 bankruptcy case on March 28, 2014 and listed the debt to the Trust in his schedules. Emily Kim filed this adversary proceeding asking that the debt be declared nondischargeable under § 523(a)(4) of the Bankruptcy Code.

The Debtor asserts this proceeding should be dismissed for at least three reasons. First, he asserts, this action, if prosecuted at all, should have been brought by Janet Datema as the Trustee of the Trust, not by Emily Kim. "As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party. The right to bring such an action belongs to the trustee. Ordinarily a beneficiary cannot even assert a claim of the trust in equity."[8] The Debtor is thus correct that, as the facts are pled in the Amended Complaint, Janet Datema, as Trustee of the Trust, would be the proper party to be asserting this suit against the Debtor.

However, although not pled in the Amended Complaint, Emily Kim indicates in her Response to Defendant's Brief and Suggestions in Support of Motion to Dismiss, that she may be a co-trustee of the Trust. If that were true, that might give her standing. In addition, "[i]f the trustee [of a trust] improperly refuses or neglects to bring an action against the third person, the beneficiary can

---

[8] *International Assoc. of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 851 (8th Cir. 2003) (quoting *Ricke v. Armco, Inc.*, 92 F.3d 720, 724 (8th Cir. 1996); Restatement (Second) of Trusts §§ 281(1), 280 (1957)). *See also* Restatement (Second) of Trusts § 282, Comment on Subsection (1) ("Ordinarily the interest of the beneficiary is protected against third persons acting adversely to the trustee through proceedings brought against them by the trustee and not by the beneficiary. As long as the trustee is ready and willing to take the proper proceedings against such third persons, the beneficiary cannot maintain a suit in equity against them.").

maintain a suit in equity against the trustee and the third person."[9] Emily Kim has not alleged that Janet Datema improperly refused or neglected to bring this action, nor has she named Janet Datema as a defendant. In any event, the Debtor is correct that the Amended Complaint was not filed by the proper plaintiff.

In addition, it is not at all clear from the Amended Complaint who made the loans to whom. As noted above, the two loans for which Promissory Notes were executed name Emily Kim and Janet Datema as the lenders, respectively, not the Trust. And each of those loans was made to TimberSource, not the Debtor. The Amended Complaint does not allege who made the remaining loans.

However, even if those defects could properly be corrected by substituting parties or further amending the Complaint to clarify these details, the Amended Complaint fails in any event. Most importantly, even taking all of the factual allegations against the Debtor in the Amended Complaint as true, those facts do not support a finding of nondischargeability under § 523(a)(4) of the Bankruptcy Code.

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

In order to prove "fraud or defalcation while acting in a fiduciary capacity," Emily must prove (1) that a fiduciary relationship existed between her and the Debtor; and (2) that the Debtor committed fraud or defalcation in the course of that fiduciary relationship.[10] The first element is a question of federal law.[11] "'Acting in a fiduciary capacity' is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which

---

[9] Restatement (Second) of Trusts § 282(2) (1959).

[10] *Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

[11] *Id.*

the underlying indebtedness arose."[12] For purposes of § 523(a)(4), the fiduciary capacity must arise from an express trust, not a constructive trust or mere contractual relationship.[13] This relationship is more narrowly defined under federal law than under the general common law.[14]

"According to the Eighth Circuit, the Code's reference to a 'fiduciary' applies only to trustees of express trusts, or through a statute or other state rule creating fiduciary status that is 'cognizable' in bankruptcy proceedings."[15] However, statutory exceptions to discharge are narrowly construed and the term "fiduciary" in particular is much more narrowly defined in bankruptcy than at common law.[16]

Emily Kim does not allege the existence of any express trust by which the Debtor is her or her Trust's fiduciary. Rather, Emily Kim asserts that the Debtor fits this definition simply by virtue of his relationship to her as her step-father. She cites *In re Braudis*,[17] and *In re Holman*,[18] which held:

> Clearly, then, the term "fiduciary" as used in 11 U.S.C. § 523(a)(4) is limited to the class of fiduciaries including trustees of specific written declarations of trust, *guardians*, administrators, executors, or public

---

[12] *In re White*, 315 B.R. 741, 748 (Bankr. D. Neb. 2004) (citing *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004)); *In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997) (same).

[13] *In re Long*, 774 F.2d 875, 878-89 (8th Cir. 1985).

[14] *In re Shahrokhi*, 266 B.R. at 707.

[15] *In re Murray*, 408 B.R. 268, 279 (Bankr. W.D. Mo. 2009) (citing *In re Long*, 774 F.2d at 878).

[16] *Id.*

[17] 86 B.R. 1001 (Bankr. W.D. Mo. 1988).

[18] 42 B.R. 848, 850-51 (Bankr. E.D. Mo. 1984).

officers and, absent special considerations, does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners.[19]

*Braudis* and *Holman* dealt with fiduciary obligations of partners in a partnership, not guardians. Nevertheless, focusing on the word "guardian" from this passage, Emily Kim asserts the Debtor is her fiduciary as her step-father and, thus, "guardian" *in loco parentis*. However, the cases finding "guardians" to be fiduciaries under § 523(a)(4)'s very narrow definition involve defendants were appointed as guardians under a document or court order.[20] Emily Kim cites no case holding that merely being a step-parent – or even a biological parent, for that matter – without an express trust is a "guardian" for purposes of the definition of "fiduciary" under § 523(a)(4).

I found a single case, *In re Tatro*,[21] holding that, under Kansas law, a minor child's father is a "natural guardian" of the minor child and that this role places him in a fiduciary relationship under Kansas statute and, therefore, § 523(a)(4). Emily Kim cites no similar Missouri statute. However, even if there were one, and it included step-parents, as the Court in *In re Tatro* acknowledged, "[f]or a fiduciary capacity to arise under a statute, the state statute must: (1) define the res;

---

[19] *In re Braudis*, 86 B.R. at 1004 (quoting *In re Holman*, 42 B.R. at 851) (emphasis added).

[20] *See, e.g.*, *In re Dauterman*, 156 B.R. 976 (Bankr. N.D. Ohio 1993) (court appointed guardians had "uncontroverted" express and statutory trust relationship); *In re Beach*, 13 B.R. 759 (Bankr. M.D. Ala. 1981) (appointed guardian of minor children); *In re Byrd*, 15 B.R. 154 (Bankr. D. Va. 1981) (court-appointed "committee" of father which is a fiduciary under Virginia statute).

[21] 387 B.R. 833 (Bankr. D. Kan. 2008).

(2) spell out the fiduciary duty; and (3) impose a trust on funds prior to the act creating the debt."[22]

Similarly, the Eighth Circuit has said:  "It is not enough that a statute purports to create a trust:  A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'  Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable *res* and (2) impose 'trust-like' duties."[23]  Further, "[u]nless the parties intended a trust, defined a trust *res*, and gave specific duties regarding the trust funds or unless a statute imposes a trust, the fiduciary relationship contemplated in § 523(a)(4) does not extend to financing arrangements or security agreements."[24]

Emily Kim does not allege that the Debtor was entrusted with a *res* for her benefit.  Rather, she alleges that the Debtor obtained loans from the *res* entrusted to Janet Datema as Trustee of her Trust and then failed to repay them.  In other words, the Amended Complaint plainly lacks factual allegations necessary for the imposition of a fiduciary relationship as that term is narrowly contemplated under § 523(a)(4) for fraud or defalcation in a fiduciary capacity.

Although Emily Kim focuses on the fraud and defalcation ground, § 523(a)(4) also excepts from discharge debts incurred by embezzlement and larceny.  In contrast to fraud and defalcation, embezzlement and larceny need not occur within a fiduciary capacity in order to be nondischargeable under § 523(a)(4).

---

[22] *Id.* at 840.

[23] *In re Thompson*, 686 F.3d 940, 945 (8th Cir. 2012) (citation omitted).

[24] *In re Richmond*, 429 B.R. 263, 301 (Bankr. E.D. Ark. 2010) (citation omitted).

> Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.
>
> The required elements of embezzlement are: (1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation of reason or purpose. For purposes of section 523(a)(4) it is improper to automatically assume embezzlement has occurred merely because property is missing, since it could be missing simply because of noncompliance with contractual terms.
>
> Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful. For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of same."
>
> In short, section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's care, and therefore was an embezzlement.[25]

As stated, the Amended Complaint alleges only that the Debtor or his companies obtained loans from the Trust and failed to repay them. It does not allege that property was "entrusted" to the Debtor, that the Debtor had fraudulent

---

[25] 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev.) (footnotes omitted).

intent or deceit when he received the money, or that he disbursed the money without explanation. It alleges that he "misappropriated funds loaned to him by the Trust and failed to repay the loans," but states nothing about how the funds were misappropriated. Indeed, the Amended Complaint alleges that "[t]he money loaned from the Trust was for Debtor's personal benefit as well as for the benefit of TimberSource, *which was used to support Debtor's family, including Emily Kim.*"[26]

In sum, the Amended Complaint merely alleges that the Debtor or his companies obtained loans from Trust funds and failed to repay them. Failing to repay loans is not by itself grounds for a determination of nondischargeability under 11 U.S.C. § 523(a)(4).

ACCORDINGLY, the Debtor-Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Chief Bankruptcy Judge

Dated: 10/29/2014

---

[26] First Amended Complaint to Determine Dischargeability (Doc. No. 29) at ¶ 27 (emphasis added).